**SO ORDERED.**

**SIGNED this 22nd day of September, 2017.**



_____
Robert E. Nugent
United States Bankruptcy Judge

DESIGNATED FOR ONLINE PUBLICATION

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| IN RE:<br><br>**STEPHEN GREGORY GRILLOT,**<br><br>Debtor. | Case No. 16-11262<br>Chapter 7 |

## ORDER DENYING DEBTOR'S MOTION FOR SUMMARY JUDGMENT

Section § 707(b)(1) ordains that granting relief in certain chapter 7 filings made by debtors whose debts are primarily consumer debts may be an abuse of the provisions of chapter 7 if the debtors' financial circumstances are sufficiently comfortable and may be dismissed or, if the debtor consents, converted to cases under chapter 11 or 13.[1] Section 707(b) does not apply if the debts are not primarily

---

[1] *See* 11 U.S.C. § 707(b)(2) (presumed abusive) and (b)(3) (abusive under the totality of the circumstances).
1

consumer debts. If the debtor incurred more than half of the debts "primarily for a personal, family, or household purpose," they are primarily "consumer debts."[2] While debtors usually guarantee business debt with a profit motive that distinguishes such guaranties from consumer debts, alimony obligations for a former spouse's support are more in the nature of consumer debts. Here, a creditor claims that the debtor guarantied his soon-to-be ex-wife's business's industrial revenue bond obligations in exchange for her excusing him from paying alimony as their 34-year marriage ended. That creditor argues that the guaranty debt is consumer debt that subjects the debtor to § 707(b)'s means test and the debtor seeks summary judgment. At issue, then is whether the debtor incurred the guaranty debt primarily for a personal, family, or household purpose. The record contains too many open factual issues to support entering summary judgment at this time.[3]

Findings of Fact[4]

Steven Grillot is a 64-year-old emergency care staff physician who is a salaried employee at a hospital in El Dorado, Kansas. He works for another medical center and holds a third job as a county EMS Director. He receives salary compensation for these services. Before 2013, Stephen was employed by hospitals as an independent contractor. He underpaid his income taxes during that time and, when he filed this case on July 8, 2016, he was attempting to repay back taxes through asset sales and

---

[2] *See* 11 U.S.C. § 101(8).
[3] Dr. Stephen Grillot appears by his attorney William B. Sorensen, Jr. Security Bank of Kansas City, as Trustee of Industrial Revenue Bonds on the Concierge Surgical Recovery Center project, appears by Eric W. Lomas.
[4] Factual matters found not be in dispute in this order are treated as "established" facts for the purpose of deciding the Bank's motion to dismiss. *See* Fed. R. Civ. P. 56(g).

2

his income. At the petition date, Stephen owed $445,911 in back taxes, $246,936 of which is non-dischargeable priority taxes.

In 2008, Stephen and his then-wife, Terrie helped organize Tierra Verde Development, LLC ("TVD"). Stephen owned at least a 10% equity interest in TVD.[5] TVD was organized to acquire land from the city of Bel Aire, Kansas (a suburb of Wichita) for a mixed-use development that was to include a surgical recovery center. TVD acquired the land in 2008. At the same time, and as part of the development, Terrie organized what was ultimately named Concierge Surgical Recovery Center, LLC (CSRC) to develop the surgery recovery center. Stephen had no equity interest in CSRC. CSRC purchased two acres of the TVD land in May of 2013 for $261,000.[6] To fund the development of the surgical recovery center, CSRC asked the city of Bel Aire to issue Industrial Revenue Bonds in 2013. The City sold those bonds and used the proceeds to fund CSRC's development. In turn, CSRC conveyed the property to the City. The City leased it back to CSRC. CSRC's lease payments were to repay the bondholders. As part of the transaction, Stephen and other investors were asked to execute limited guaranties of the bond debt and CSRC's lease payments. Stephen signed a guaranty sometime in 2013.[7] The project failed, CSRC defaulted on the lease,

---

[5] According to the Grillots' Settlement Agreement in their divorce case, Stephen and Terrie each owned 20% of the Class B shares of TVD. Terrie also held options on some of the TVD land. Doc. 61, Ex. 3, pp. 34-5. Stephen retained his interest in TVD under the Settlement Agreement. The correct percentage of Stephen's interest in TVD is not material to the summary judgment motion.
[6] Ex. 5, ¶ 8 to Doc. 61, p. 53,
[7] The written guaranty has not been made a part of the summary judgment record nor is it attached to Security Bank's proof of claim. The precise date of the guaranty and its terms are unknown.

3

and Stephen and the other guarantors were left with guaranty liability to Security Bank as trustee of the bond issue. The bond trustee sued Stephen and the other guarantors, obtaining a $613,000 judgment (plus pre- and post-judgment interest) against Stephen on June 23, 2016.[8]

Before the CSRC venture began, Stephen had filed for divorce from Terrie in early 2011.[9] The divorce case lasted into 2014. Stephen's statement of uncontroverted facts states that he was "motivated to assist the Tierra Verde Project, as Terrie promised the debtor she would need no further financial assistance from him thereafter."[10] But, in July of 2014, Stephen and Terrie executed a Settlement Agreement in the divorce case that purported to resolve all spousal maintenance and property division claims, including those relating to their business interests.[11] The Agreement does not specifically mention Stephen's 2013 guaranty, but does state:

> Respondent will indemnify and hold Petitioner harmless if he were ever required to pay anything toward any debt (including the Community National Bank loan) for Concierge Surgery and Recovery Center, LLC or its related entities. [12]

The Agreement also specifies that Stephen was to pay Terrie $2,500 monthly spousal maintenance for six months in addition to the spousal maintenance he had previously paid under the temporary orders entered in the case.[13] This provision casts the

---

[8] *See* Security Bank's Proof of Claim No. 2 showing Journal Entry of Final Judgment filed of record on June 23, 2016 and amount of the judgment on the date of the petition, July 8, 2016 as $644,511.
[9] Ex. 1 attached to Security Bank's summary judgment response, Doc. 61 shows the petition for divorce was filed January 11, 2011.
[10] Doc. 52, ¶ 8.
[11] Ex. 3 attached to Doc. 61, pp. 30-46.
[12] *Id.* at p.35.
[13] *Id.* at p. 32.

4

alleged guaranty-for-alimony-waiver agreement into doubt. In the Division of Debts section, Terrie agrees to "assume and pay and hold [Stephen] harmless from the payment of . . . any debt associated with [CSRC] or its related entities . . . ."[14]

Stephen filed this chapter 7 case on July 8, 2016 and stated in his petition stated that his debts were primarily business debts.[15] He claims to be exempt from the presumption of abuse, and therefore, did not complete Official Form 122A – 1 to determine whether the means test applies.[16] Stephen's debts are as follows:

| | |
|---|---:|
| First Premier Bank | 88.06 |
| Allied Home Mortgage Co. | 175,000.00 |
| Internal Revenue Service (Schedule D and E) | 445,911.00 |
| Kansas Dept. of Revenue | 19,378.38 |
| Kanza Bank (in rem only) | 23,000.00 |
| Security Bank | <u>642,117.50</u> |
| Total | $1,305,494.94 |

Security Bank's claim makes up approximately 49% of Stephen's indebtedness.

Stephen contends that his debts are not "primarily consumer debts" as that phrase is used in § 707(b), but the Bank asserts that because Stephen was motivated to sign the guaranty to avoid exposure to alimony, he incurred the guaranty debt in lieu of alimony, making it a debt incurred for "personal, household or family purposes." If that is so, his debts would be "primarily consumer debts," exposing him

---

[14] *Id.* at p. 40.
[15] Doc. 1, p. 6, line 16.
[16] Doc. 1, p. 53 – Official Form 122A – 1Supp.

5

to the means test and, the Bank contends, granting him chapter 7 relief would be an "abuse of the provisions of this chapter." His case must therefore either be dismissed or, with his consent, converted to chapter 11.[17] The Bank filed a motion to dismiss for abuse under § 707(b).[18] Stephen responded with this motion for summary judgment.[19] At issue is whether the guaranty debt is a "consumer debt." If the Bank's judgment on the guaranty debt is a "consumer debt," when added to his other consumer debts, including those of First Premier Bank and Allied Home Mortgage, over half of Stephen's debts would be "consumer debts."[20]

Summary Judgment Standards

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. An issue of fact is material if under the substantive law, it is essential to the proper disposition of the claim.[21] Only disputes over facts that might affect the outcome of the suit under the governing law will preclude the entry of summary judgment. Substantive law identifies which facts are critical and which facts are irrelevant.[22] Even where the material facts are uncontroverted, those facts must

---

[17] Stephen's debts appear to exceed the eligibility limits of chapter 13, *see* §109(g).
[18] Doc. 17. The Bank seeks in the alternative to convert the case to chapter 11 under § 706(b), Doc. 19. The chapter 7 trustee filed a response in opposition to the Bank's dismissal motion. *See* Doc. 27.
[19] Doc. 51, 52.
[20] It is uncontroverted that the Allied and First Premier debts are consumer debts. *See* Doc. 52, p. 5, ¶ 18 and Doc. 61, p. 3, ¶ 18.
[21] Fed. R. Civ. P. 56(a). Fed. R. Bankr. P. 9014 makes Bankruptcy Rule 7056, which incorporates Civil Rule 56, applicable to contested matters. *See Thomas v. Metropolitan Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011).
[22] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

6

demonstrate that the movant is entitled to judgment under the applicable law.[23] The court must consider the record in the light most favorable to the party opposing the motion.[24] The Court determines "whether the evidence presents a sufficient disagreement to require submission to the [finder of fact] or whether it is so one-sided that one party must prevail as a matter of law."[25]  In making such a determination, the Court should not weigh the evidence or credibility of witnesses. If an inference can be deduced from the facts that would allow the nonmovant to prevail, summary judgment is inappropriate.[26]

Analysis

Section 707(b) requires the Court to dismiss a chapter 7 petition filed by a debtor whose debts are "primarily consumer debts" if granting that debtor relief "would be an abuse of the provisions of [chapter 7]."[27] This section imposes a presumption that abuse exists if the debtor's current monthly income minus certain expenses outlined in § 707(b)(2) exceeds a certain amount. Abuse can also be found if the debtor filed the case in bad faith or if the totality of the circumstances suggests that abuse has occurred.[28] But even before a court considers those factors, it must determine whether the debtor's debts are "primarily consumer debts." Stephen's

---

[23] *See Clifton v. Craig*, 924 F.2d 182, 183-84 (10th Cir.1991)*, cert. denied* 502 U.S. 827 (1991) (if material facts are not in dispute, "we must next determine if the substantive law was correctly applied."); *Black v. Baker Oil Tools, Inc.*, 107 F.3d 1457, 1460 (10th Cir. 1997).
[24] *McKibben v. Chubb*, 840 F.2d 1525, 1528 (10th Cir. 1988) (citation omitted); *Bee v. Greaves*, 744 F.2d 1387, 1396 (10th Cir.1984), *cert. denied*, 469 U.S. 1214 (1985).
[25] *Anderson*, 477 U.S. at 251-52.
[26] *United States v. O'Block*, 788 F.2d 1433, 1435 (10th Cir. 1986) (citation omitted).
[27] *See* §707(b)(1).
[28] *See* § 707(b)(3).

7

principal debts are his back taxes and the CSRC guaranty. Tax debt is generally not considered consumer debt.[29] But if the $642,117.50 guaranty is consumer debt, over half of the debtor's indebtedness will be consumer debt, exposing Stephen to the consequences of the means test. The motion turns on Stephen's purpose in signing the guaranty.

"Consumer debt" is a defined term in the Code. Section 101(8) defines it as debt that is "primarily incurred for a personal, family, or household purpose."[30] Tenth Circuit authority suggests that whether a debt is "primarily consumer debt" rests on whether the debt was incurred with a profit motive.[31] In *In re Stewart*, the Court of Appeals examined a series of loans taken by a debtor-doctor from his in-laws while he was in medical school and considered how he and his then-wife used the loan proceeds. A substantial portion of the proceeds was spent on family expenses so that the loans could be characterized as consumer debt.[32] The court also held that Stewart's alimony obligations were for his former wife's support and benefit and not for profit motives, making the alimony debts consumer debt for the purpose of § 707(b).

But several courts conclude that the profit motive test is not the "be-all and end-all" in distinguishing non-consumer and consumer debt. It is difficult to apply in

---

[29] The courts generally conclude that because tax debt is not "incurred," but is involuntarily imposed by the government in the course of earning income and has a public purpose, income tax obligations are not consumer debts. *See e.g., In re Brashers,* 216 B.R. 59, 60-61 and n. 1 (Bankr. N.D. Okla. 1998) (citing numerous cases).
[30] § 101(8).
[31] *See In re Stewart*, 175 F.3d 796, 806 (10th Cir. 1999).
[32] Id. at 807.

8

cases where there has been no extension of credit to the debtor and no "consumption" or use frequently associated with a consumer debt. Section 101(8) makes no reference to such a test. In discussing the profit motive test, the *Brashers* court noted that while "debts incurred with a "profit motive" are **clearly** non-consumer, the reverse is not true."[33] In other words, a debt not incurred with a profit motive doesn't necessarily mean that the debt is a consumer debt.[34]

This makes determining the primary "purpose" of Stephen's guaranty more complex. On the surface, an individual guaranty of business debt is itself generally a non-consumer debt.[35] This is especially true where the guarantor has some interest in the business that incurred the underlying debt. In that context, the guaranty will satisfy the profit motive test. But that is not the situation here. Stephen guaranteed CSRC's business debt despite having no interest in CSRC. He stood to gain nothing directly from CSRC's business venture, if it succeeded.[36] He did not receive or use any of the bond proceeds. His guaranty liability has now been reduced to a civil judgment

---

[33] *See In re Brashers,* 216 B.R. at 61, n.2 discussing the profit motive test and concluding that it is not applicable to all non-consumer debts; personal income tax debts are other non-consumer debts that are not incurred with a motivation for making a profit), *agreeing with In re Stovall,* 209 B.R. 849 (Bankr. E.D. Va. 1997). *Stovall* cited other non-consumer debts that are incurred without a profit motive, including a civil judgment arising from a car accident and tort liability. 209 B.R. at 854.

[34] *In re Brashers*, 216 B.R. at 61, n. 2. *See also In re Peterson,* 524 B.R. 808, 813 (Bankr. S.D. Ind. 2015) (inability to classify a particular debt as a business debt does not automatically relegate it to the status of a consumer debt; intentional tort judgment was not a consumer debt).

[35] *See In re SFW, Inc.,* 83 B.R. 27 (Bankr. S.D. Cal. 1988) (shareholders' guaranties of commercial loans were not consumer debts); *In re Jelinger,* Adv. No. 12-3156, 2014 WL 996266 at *4 (Bankr. N.D. Ohio Mar. 13, 2014) (guaranties on corporate debt are not consumer debts).

[36] *See In re Straughter,* 219 B.R. 672 (Bankr. E.D. Pa. 1998) (to qualify as "consumer debt," consumption must be involved; wife's guaranty was for purpose of providing funds for her debtor husband's business and debt was not used in any consumer capacity).

9

for some portion of CSRC's debt. This is one of those situations where the profit motive test is simply "unworkable."[37]

Stephen did receive a share of the sale proceeds when TVD sold the two-acre tract to CSRC.[38] Although Stephen has affirmatively stated that his "motive" in signing the guaranty was to secure Terrie's assurances that she would seek no further financial assistance from him, "motive" is not the same as "purpose." "Motive" is defined as "the cause or reason that induces action."[39] "Purpose" is "that which one sets before him to accomplish; an end, intention, or aim, object, plan, project."[40] Though his "cause or reason" to sign may be clear, many questions remain in the record concerning Stephen's "objective" or "end" in signing the guaranty. Stephen signed the guaranty in 2013 after the divorce case had been pending since 2011. While he may have been enticed to sign it by a promise of no alimony, he might also have done it to facilitate the TVD-CSRS land transaction from which he may have profited. The "deal" to substitute the guaranty for alimony that the Bank relies on is undercut by the Settlement Agreement's requirements that Stephen pay Terrie support over six additional months and that she hold him harmless on any CSRC-related debt. Recall that the Settlement Agreement, executed in 2014 *after* Stephen signed the guaranty, contains no reference to the "deal," but it does contain an integration clause that states that it is the complete and full agreement of the parties.[41]

---

[37] *See In re Millikan,* No. 07-01759-AJM-7, 2007 WL 6260855 at *5 (Bankr. S.D. Ind. Sept. 7, 2007).
[38] Doc. 61, p.35.
[39] Henry Campbell Black, BLACK'S LAW DICTIONARY, 4th Ed. Rev., p. 1164 (West, 1968).
[40] *Id.,* p. 1400.
[41] Doc. 61, p. 44.

Stephen's primary purpose in signing the guaranty or what "end" he sought remains in question here. Because the Court is required to resolve all doubts in favor of the Bank and does not assess credibility or weigh evidence at this stage, Stephen's motion for summary judgment must be DENIED.

The Clerk is therefore directed to set the Bank's § 707(b) motion to dismiss for abuse (Doc. 17), and its alternative § 706(b) motion to convert to chapter 11 (Doc. 19), for final pretrial status conference as well as an evidentiary hearing.

### 

11